THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH BUTLER, Defendant-Appellant.

First District (1st Division)    No. 77-1389

Opinion filed October 10, 1978.—Rehearing denied November 6, 1978.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Pamela Louise Gray, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Joseph Butler was charged by information with the murder of his wife and attempt murder of his daughter. After a bench trial, defendant was found not guilty by reason of insanity of these offenses and was immediately committed to the Department of Mental Health by the trial judge. Defendant appeals from his commitment, asserting that the failure to conduct a separate civil commitment hearing at the conclusion of the criminal trial violated his rights to due process and equal protection of the laws.

In the afternoon of December 11, 1975, defendant went to Holy Angels Church and asked to speak to a priest. Father Kenneth Brigham testified at the trial that defendant told him he had just killed his wife. Defendant told the priest that he had been under the influence of witchcraft when he stabbed his wife, and asked the priest to call the police. When the police arrived, defendant told them "I killed my wife" before any interrogation by the police had begun. The arresting officer advised defendant of his rights. Defendant took the police to his home, opened the door with his key, led the police to the body on the couch, and produced the knife which he had used for the stabbing. There were six children in the apartment. Defendant told the police that he had tried to kill himself by swallowing pills, but had vomited. Pills were found on the kitchen table. There is no issue raised as to the voluntariness of defendant's statement to the police or the admissibility of his statements to the priest, Father Brigham.

Evidence was also adduced which showed that defendant, before the killing of his wife, had held the head of his five-year-old daughter under water in an effort to force his daughter to tell him about his wife's plots against him. Since early 1975 defendant had frequently raged about witchcraft and voodoo being practiced by his wife and her mother against him.

The two police officers who had interrogated defendant on the afternoon of his arrest were permitted to express their opinion that the

defendant was sane at the time of their interviews and sane at the time of the offense.

Three psychiatrists testified. Dr. Robert Reifman, Assistant Director of the Psychiatric Institute of the Circuit Court of Cook County, examined the defendant on February 25, 1976, and March 23, 1976. He had also reviewed a psychiatric examination report prepared in 1970 by a Dr. Stern, the police report of the incident, two social histories and a discharge report from the V. A. Hospital. In the opinion of Dr. Reifman, defendant was suffering from schizophrenia, paranoid type, on December 11, 1975, and, as a result of this psychosis, was unable to conform his conduct to the requirements of the law and lacked substantial capacity to appreciate the criminality of his conduct. Reifman had concluded that, as of the date of his last examination, defendant had not recovered and was in need of further treatment. He testified further that defendant's schizophrenia dated back to at least 1974, and that the disease is a long-term mental illness. While defendant appeared, in March 1976, to have partially recovered, the doctor could not assess how much of the recovery was real and how much was only apparent and due to thorazine medication.

Dr. Bernard Rubin testified that he examined defendant for about two hours on August 17, 1976. He had also read all reports on defendant, including the report of Dr. Reifman. In his opinion, defendant was not, and had not been, schizophrenic or suffering from a psychosis at the time of the offense or at the time of his examination. In his opinion, defendant had a "character disorder or personality problem" which he would classify as "borderline," meaning that, under stress, he loses organization of self and responds with anger, feelings of helplessness and panic. Rubin believed that defendant could appreciate the criminality of his conduct and had capacity to conform his conduct to the law, but that defendant's control had been "diminished" by the stresses he had felt over 12 to 14 hours before the killing.

Dr. Nelson Bradley, who had examined defendant on October 21, 1976, was of the opinion that defendant was not legally responsible for his conduct on December 11, 1975. He diagnosed defendant as suffering from toxic psychosis produced by alcohol consumption. He found some evidence of paranoid schizophrenia, but his primary diagnosis was the toxic psychosis. Because of the disease, defendant could not control his actions or conform his conduct to the law. At the time of his examination, defendant was "not 100 percent" fine; though he was "[n]ot acutely psychotic," and was able to respond to the doctor's questions, the doctor would not say that defendant's answers were those of a "completely normal person."

After arguments were heard, the court stated as follows:

"\* \* \* I will find the defendant not guilty by reason of insanity and find that the defendant is in further need of mental treatment and that evidence is unrebutted in the record."

The defendant then stated:

"Your Honor, I would like to say the only way I would be able to recover is for my trust and belief in God. That is the only way I was able to recuperate. [*Sic.*]"

No objection was raised by defendant or his counsel to the factual finding of the court or to the order of commitment. The supplemental record reveals that notice of appeal was filed by defense counsel on March 25, 1977, without defendant being present and without either argument on the grounds for the appeal or an oral or written post-trial motion for a new trial or in arrest of judgment.

Defendant argues that his commitment violated his constitutional right to due process of law because he was committed without a hearing on whether, at the time of trial (March 1977), he was suffering from a mental disease or defect and as a result was dangerous to himself or others. (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.) Defendant argues that his right to the equal protection of the law was also violated, because there is no rational basis for classifying persons who are found not guilty by reason of insanity differently from other persons who are asserted to be in need of mental treatment.

The State argues that the case is moot, because (1) defendant has been discharged from his commitment, (2) defendant has had a court review of his continued need for mental treatment, and (3) the statute under which defendant was committed (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4(b)) has been amended to require a civil commitment hearing in these cases, instead of a finding by the court or jury of whether a defendant has recovered from his insanity. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4, amendment effective January 8, 1978.) The State also argues in the alternative that the order should be affirmed because defendant has waived this issue by the complete absence of any objection by defendant or his counsel to the finding of the court or the order of commitment, and the failure to make any post-trial motions. Finally, the State argues that any error was harmless because defendant's commitment is supported by clear and convincing evidence.

■■ ■ We believe the case is moot because defendant has been discharged following a hearing on his continued need for mental treatment. (*People ex rel. Craine v. Boyd* (1976), 41 Ill. App. 3d 538, 353 N.E.2d 696.) Where collateral consequences which may affect the defendant adversely would survive his release, the mootness rule is not applied. (*In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.) But

where, as here, the commitment on appeal is not the first time the defendant has been treated for a mental disorder, the collateral consequences exception has no effect and the case remains moot. (*People ex rel. Craine v. Boyd.*) This defendant's medical history reveals that he had been institutionalized prior to this commitment and defendant has pointed out no other compelling collateral consequences of this commitment.

Defendant argues that he has not been completely released from custody of the Department of Mental Health. The record reveals that defendant's discharge is conditional on outpatient psychiatric care, monthly reports by the defendant to the trial court on his progress, and the defendant's observance of the court's orders to have no personal contact with his children and to abstain from alcoholic beverages. But the order, dated March 20, 1978, also recites that it was entered "after a hearing held pursuant to Illinois Revised Statutes, chapter 38, paragraph 1005—2—4(d) (1977)." While no transcript of such a hearing has been presented to us, the cited section requires a fresh determination of whether the defendant is in need of mental treatment. In the absence of a report of proceedings, it is presumed that the trial court heard adequate evidence to support the decision rendered. (*Skaggs v. Junis* (1963), 28 Ill. 2d 199, 190 N.E.2d 731.) If we were to decide this case on the merits and in favor of defendant, and were to vacate the order of commitment and remand for a commitment hearing in compliance with the amended statute, we would be ordering a useless act, since defendant, as of March 20, 1978, has already had a redetermination of his need for mental treatment.

The case is moot; this appeal from the circuit court of Cook County is therefore dismissed. *Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 311 N.E.2d 134.

Appeal dismissed.

McGLOON and BUCKLEY, JJ., concur.